UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JERMAINE S. WILSON,

                      Plaintiff,

v.                                                                           7:15-CV-1130
                                                                               (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                                                     OF COUNSEL:

CONBOY, MCKAY LAW FIRM                    VICTORIA H. COLLINS, ESQ.
  Counsel for Plaintiff
407 Sherman St.
Watertown, NY 13601-9990

U.S. SOCIAL SECURITY ADMIN.               BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 11.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Jermaine S. Wilson ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted in part and denied in part and Defendant's motion be granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on June 1, 1981. (T. 153.) He completed high school. (T. 174.) Generally, Plaintiff's alleged disability consists of lumbar spondylosis. (T. 173.) His alleged disability onset date is March 11, 2013. (T. 173.) His date last insured is December 31, 2018. (T. 60.)[1] He previously worked as a water treatment specialist. (T. 174.)

### B. Procedural History

On May 7, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 36.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 23, 2015, Plaintiff appeared before the ALJ, Marie D. Greener. (T. 57-89.) On April 29, 2015, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 33-51.) On July 24, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

---

[1] Elsewhere in the record Plaintiff's date last insured is listed as December 31, 2017. (T. 90, 99, 169.) Neither party disputes the ALJ's finding.

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 38-46.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2018 and Plaintiff had not engaged in substantial gainful activity since March 11, 2013. (T. 38.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease in the lumbosacral spine and residuals, status post collateral ligament surgery. (T. 39.) The ALJ determined that Plaintiff's mental impairments, diabetes, and hypertension were non-severe impairments. (T. 39-40.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 40.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work. (*Id.*)[2] Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 45-46.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly assess Plaintiff's mental impairments. (Dkt. No. 9 at 8-14 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to state what limitations Plaintiff had that were attributable to Plaintiff's severe impairments. (*Id.* at 14-15.) Third, Plaintiff argues the ALJ failed to make adequate

---

[2]     Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

findings regarding Plaintiff's credibility. (*Id.* at 15-18.) Fourth, and lastly, Plaintiff argues that the ALJ failed to properly assess Plaintiff's RFC. (*Id.* at 18-21.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues substantial evidence supported the ALJ's findings that Plaintiff did not have a severe mental impairment. (Dkt. No. 10 at 5-8 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ provided valid reasons for finding Plaintiff's statements regarding his subjective symptoms less than fully credible. (*Id.* at 8-10.) Third, and lastly, Defendant argues that substantial evidence supported the ALJ's RFC finding. (*Id.* at 11-13.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

4

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation

process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

For ease of analysis, Plaintiff's arguments will be address out of order and in a consolidated manner.

### A. The ALJ's Evaluation of Plaintiff's Mental Impairments at Step Two

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff has a severe impairment that significantly limits his physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). Plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir. 1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

At steps two and three of the sequential process, the ALJ must apply a "special technique" to evaluate alleged mental impairments. *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir. 2008). As the Second Circuit has explained:

> This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1). If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity. *Id.* § 404.1520a(d)(3).

*Kohler,* 546 F.3d at 265-266.

Moreover, the Regulations "require the ALJ's written decision to reflect application of the technique, and explicitly provide that the decision *'must* include a specific finding as to the degree of limitation in each of the functional areas described in

paragraph (c) of this section.'" *Kohler,* 546 F.3d at 266 (quoting 20 C.F.R. § 404.1520a(e)(2)).

The Court in *Kohler* left open the possibility that an ALJ's failure to adhere to the Regulations' special technique might be harmless; however, the Court determined the ALJ's error in *Kohler* was not harmless because they could not "identify findings regarding the degree of Plaintiff's limitations in each of the four functional areas nor discern whether the ALJ properly considered all evidence relevant to those areas." *Kohler*, 546 F.3d at 269.

Plaintiff initially argues that the ALJ failed to follow, or even reference, the special technique. (Dkt. No. 9 at 8 [Pl.'s Mem. of Law].) Plaintiff's argument is without merit. At step two, the ALJ made specific findings regarding Plaintiff's degree of limitations in each of the functional areas in accordance with *Kohler*. The ALJ determined that Plaintiff's mental health symptoms "presented a mild limitation of daily living activities, a mild limitation maintain[ing] social functioning and a mild limitation maintain[ing] concentration, persistence or pace." (T. 39.) Further, the ALJ provided citation to medical evidence in the record to support her determination, namely the opinion of non-examining State agency consultant, C. Butensky. (*Id.*)

Plaintiff then argues that treatment records supported greater limitations in the functional areas, that the ALJ erred in her reliance on the opinion of Dr. Butensky, and that the ALJ incorrectly noted Plaintiff did not have inpatient treatment until November of 2014, when in fact Plaintiff had inpatient treatment in September of 2014. (Dkt. No. 9 at 9 [Pl.'s Mem. of Law].) Essentially, Plaintiff argues that the ALJ failed to determine that Plaintiff's mental impairments were severe impairments at step two.

8

In support of his argument, Plaintiff provides a list of medical evidence documenting treatment and diagnosis of mental impairments. (Dkt. No. 9 at 9 [Pl.'s Mem. of Law].) However, as stated herein, courts have held that "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman,* 895 F.Supp. at 53.

The evidence provided by Plaintiff does not indicate Plaintiff's limitations were greater than those provided by the ALJ. Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

On August 11, 2014, Dr. Butensky reviewed the evidence in the record and completed a case analysis. (T. 92-94.) Therein, Dr. Butensky opined that Plaintiff suffered from an affective disorder and ADD/ADHD. (T. 93.) He opined that Plaintiff had mild limitations in: his activities of daily living; maintaining social functioning; and

maintaining concentration, persistence or pace. (*Id.*) He opined that Plaintiff had no repeated episodes of decompensation for extended duration. (*Id.*) In his analysis, Dr. Butensky noted that Plaintiff had no history of inpatient mental health treatment, he received outpatient treatment since 2012, and was prescribed psychiatric medication. (*Id.*) He noted that Plaintiff was diagnosed with mood disorder and ADHD and that PTSD symptoms were noted "in the past." (*Id.*)

In addition to Dr. Butensky's opinion, the ALJ noted that Plaintiff received inpatient mental health treatment once in "November of 2014" that "only lasted a few days." (T. 39). Plaintiff actually received inpatient treatment from September 13, 2014 through September 19, 2014; however, any error here was harmless. The September 2014 inpatient treatment was the only inpatient treatment in the record and it appears the ALJ's error was typographical.

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, at 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing

*Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016). Therefore, the ALJ did not err in relying on Dr. Butensky's opinion in making her step two determination that Plaintiff's mental impairments were non-severe. *See Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (at step two and three the ALJ properly relied on a PRTF completed by a state agency reviewing psychologist and a single episode of hospitalization for four days).

In any event, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its

11

requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

In sum, the ALJ did not commit error at step two of her analysis. The ALJ properly evaluated Plaintiff's mental impairments in accordance with the "special technique." Further, the ALJ did not err in her reliance on the opinion of Dr. Butensky in making her step two determination. Even had the ALJ committed error at step two any error would be harmless because the ALJ found other severe impairments at step two and the ALJ discussed Plaintiff's mental impairments in the remainder of her analysis.

### B.     The ALJ's RFC Determination

Plaintiff's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing Plaintiff's RFC, the ALJ must consider "all of the relevant medical and other evidence," including Plaintiff's mental impairments. *Id.* § 404.1545(a)(3), (4). A RFC determination must account for limitations imposed by both severe and non-severe impairments. *See Id.* at § 404.1545(a)(2). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.; Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996). Plaintiff argues the ALJ erred in her RFC analysis and determination for many reasons.

Plaintiff argues the ALJ committed legal error in failing to provide a function-by-functional analysis of her RFC determination. (Dkt. No. 9 at 18-21 [Pl.'s Mem. of Law].) The Second Circuit has held that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a per se error requiring remand. *See Chichocki v. Astrue,* 729 F.3d 172, 174 (2d Cir.2013) ("remand is not

necessary merely because an explicit function-by-function analysis was not performed"). Therefore, Plaintiff's argument, that the ALJ failed to provide a function-by-function analysis fails.

However, "[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *See Cichocki,* 729 F.3d at 177; s*ee also Beylo v. Astrue,* No. 10-CV-354, 2012 WL 4491043, at *7, 9 (N.D.N.Y. Sept. 28, 2012) (the ALJ erred by not referencing what range of unskilled sedentary work plaintiff could perform, and by not discussing how long plaintiff could sit, stand, or walk); *Burton v. Colvin,* No. 6:12-CV-6347, 2014 WL 2452952, at *10 (W.D.N.Y. June 2, 2014) (the ALJ erred by failing to specify plaintiff's ability to sit, stand, walk, lift, carry, and bend during an eight-hour workday).

Here, the record presents a unique situation where Plaintiff's treating sources provided a medical source statement; however, the functional limitations provided were in the context of performing physical aspects of military work, not civilian work. While some of the functional limitations could be applied to civilian work, the record contained conflicting information regarding Plaintiff's ability to perform certain work functions which the ALJ failed to resolve. Namely, the record contained conflicting information about Plaintiff's ability to sit for prolonged periods of time.

The record contained a "Physical Disability Evaluation System" form from the Department of the Army dated March 19, 2014, and supplemented on May 16, 2014, regarding Plaintiff's ability to perform his duties in the army. (T. 255-256, 259-263.) The form was completed by Colette Rajner, M.D. (T. 263.) Therein Dr. Rajner provided

functional limitations that could translate to a civilian workforce, for example, Plaintiff was limited to lifting no more than 15 pounds and restricted from performing "high-impact" activities. (T. 260.) Dr. Rajner opined that Plaintiff was unable to run, wear his gear, or do repetitive squatting. (T. 261.) Dr. Rajner opined that Plaintiff was unable to perform the military occupational specialties ("MOS") requirements of frequent standing, stooping, and kneeling for a period of one hour. (*Id.*) Dr. Rajner opined that Plaintiff's occupational functioning was not limited by his PTSD, ADHD, dry eye syndrome, myopia, hypertension, hyperlipidemia, deviated septum, allergic rhinitis, mild intermittent asthma, cervical spondylosis, bilateral ulnar neuritis, gamekeeper's thumb, and right knee pain. (T. 261-262.)

Dr. Rajner also completed a "Physical Profile" from dated April 16, 2016. (T. 264.) Therein she opined that due to Plaintiff's chronic low back pain, knee pain and PTSD, Plaintiff could not ride in a military vehicle for at least 12 hours per day. (T. 264.)

On May 16, 2014, Dr. Rajner's findings were reviewed by Stanley Gould, M.D., Ph.D., who determined that Plaintiff's PTSD "could contribute and have a negative impact on army functional limitations." (T. 255.) Dr. Gould opined that Plaintiff should not have access to weapons, ammunition, explosive, sensitive or classified material. (T. 256.) He opined Plaintiff should not be exposed to combat or combat situations, should not combine his medications with alcohol, should not be deployed, should not live in an austere environment, and he required frequent access to behavioral health services. (*Id.*)

The ALJ relied on Dr. Rajner's March 2014 evaluation in formulating her RFC determination and afforded her opinion "great evidentiary weight." (T. 41.) To be sure,

14

an RFC for sedentary work accommodates the lifting limitations and other limitations, such as no repetitive squatting, imposed by Dr. Rajner; however, Dr. Ragner's report, and the record in general, lacked an assessment, or contained conflicted assessments, of Plaintiff's ability to sit. Sedentary work generally requires sitting for about six hours in an eight hour workday. SSR 96-9p (S.S.A. July 2, 1996).

In support of her RFC for sedentary work, and that Plaintiff could sit for the prescribed period, the ALJ cited to the August 2014 "Physical Profile" completed by Scott Krueger, PA-C in which he indicated Plaintiff could ride in a military vehicle for 12 hours a day. (T. 42, *referring to* 407.) However, Mr. Krueger completed the form based on Plaintiff's medical condition of "status post [left] thumb surgery." (T. 407.) Mr. Krueger's statement regarding Plaintiff's ability to ride in a military vehicle for 12 hours a day contrasted with Dr. Rajner's statement that Plaintiff could not ride in a military vehicle for at least 12 hours. (T. 264.)

To be sure, it is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC. 20 C.F.R. § 404.1545. However, an ALJ cannot assess a plaintiff's RFC based on his own interpretation of the medical evidence. *See Balsamo,* 142 F.3d at 81. Where "the record lacks a broad assessment of [plaintiff's] physical functional limitations by an acceptable medical source . . . there is an insufficiency in the record that the ALJ should [address], either by obtaining the opinion of a consultative examiner or by recontacting one of [plaintiff's] treating physicians." *Larkin v. Colvin*, No. 13-CV-0567, 2014 WL 414626, at * 9 (N.D.N.Y. Aug. 14, 2014); *see also Jones v. Colvin*, No. 14-CV-556S, 2015 WL 5126151, at *4 (W.D.N.Y. Sept. 1, 2015) (holding that an ALJ was not qualified to assess a plaintiff's RFC on the basis of bare medical findings, and

as a result the ALJ's determination of the RFC without a medical advisor's assessment was not supported by substantial evidence) (citing *Ramos v. Colvin*, No. 13-CP-6503P, 2015 WL 925965, at *9 (W.D.N.Y. March 4, 2015)); *House v. Astrue*, No. 11-CV-915, 2013 WL 422058, at * 4 (N.D.N.Y. Feb. 1, 2013) (holding that remand was necessary where there was no medical source opinion supporting the ALJ's RFC determination).

Therefore, remand is recommended for the ALJ to either request a comprehensive consultative exam or to obtain a medical source statement from an acceptable medical source regarding Plaintiff's physical functional limitations, namely his ability to sit.

As outlined herein, the ALJ properly determined that Plaintiff's mental impairments were non-severe at step two and further any error would be harmless because the ALJ thoroughly discussed the mental impairments in her RFC determination. Although remand is recommended for a proper analysis of Plaintiff's physical functional limitations, substantial evidence supported the ALJ's determination that Plaintiff could perform basic mental work activities.

Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(3)-(6), *see* also SSR 85-15 (S.S.A. 1985) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with

changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.")

In assessing Plaintiff's mental abilities in the context of his RFC, the ALJ noted Plaintiff's inpatient treatment and the medical evidence in the record from providers at the Behavioral Health Clinic. (T. 41-44.) Substantial evidence in the record supported the ALJ's determination that Plaintiff's mental impairments would not prevent him from performing the basic mental demands of work. The record contained mental status examinations which noted intact memory and concentration, adequate judgment, appropriate eye contact, cooperative behavior, and normal thought content. (T. 291, 295, 333, 341, 404, 1614, 1631, 1635, 1652, 1659, 1665.)

Therefore, substantial evidence supported the ALJ's determination that Plaintiff's mental impairments were non-severe and did not prevent Plaintiff from performing the basic mental demands of work. However, the ALJ's physical RFC determination was not supported by substantial evidence and remand is recommended for a proper physical RFC analysis.

**C.     Credibility Determination**

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23,

27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529; SSR 96–7p. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms; however, his statements

18

concerning the intensity, persistence, and limiting effects of his symptoms "no more than partially credible." (T. 44.)

Because remand is recommended so that the ALJ may obtain additional medical evidence, it is also recommend that the ALJ conduct a credibility analysis in light of any new medical opinion evidence obtained.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED in PART and DENIED in PART**, and the Commissioner's determination be **GRANTED in PART and DENIED in PART**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 3, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge